UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMIN KING,

                          Plaintiff,

      -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, and MICHAEL VISCONTI,
individually and in his official capacity,

                         Defendants.

-----------------------------------------------------------------X

**AMENDED COMPLAINT**

Civil Action #: 1:16-cv-04299

JURY TRIAL DEMANDED

The plaintiff AMIN KING ("Plaintiff"), by his attorneys Holihan & Associates, P.C., complaining of the defendants herein, respectfully shows to the Court and alleges as follows:

## JURISDICTION

1. This action is brought under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Law of the United States, as codified in Title 28, U.S.C. Sections 1331 and 1343 and Title 42, U.S.C. Sections 1981, 1983, and 1985.

2. Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under State Law.

## VENUE

3. The course of conduct and other acts complained of herein arose and occurred in whole or in part within the Counties of Queens and/or Kings, in the Eastern District of New York.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

## PARTIES

5. Plaintiff is a citizen of the United States who at all times relevant to this action resided within the Eastern District of New York and currently resides within the Eastern District of New York.

6. That at all times hereinafter mentioned, Defendant THE CITY OF NEW YORK ("The City") was, and still is, a municipal corporation duly authorized and existing under and by virtue of the laws of the State of New York.

7. That at all times hereinafter mentioned, Defendant THE NEW YORK CITY POLICE DEPARTMENT ("NYPD") is a municipal agency under the supervision and control of Defendant The City, and at all relevant times employed the defendant police officer(s) named herein.

8. Defendant MICHAEL VISCONTI ("Visconti"), at all times relevant to this complaint, was a lawfully employed and acting police officer of the NYPD with the rank of detective acting under the color of law pursuant to the statutes, ordinances, policy customs, and usage of the City of New York and the State of New York.

9. That Defendant Visconti is being sued individually and in his official capacity.

## JURY DEMAND

10. Plaintiff demands trial by jury of all issues raised in this Complaint.

## CONDITIONS PRECEDENT

11. That Plaintiff caused a Notice of Claim to be served upon Defendants on July 31, 2015, within ninety (90) days of the date of the accrual of the causes of action in this complaint.

12. That more than thirty (30) days have elapsed since the presentation of said notice of claim, and that said claim remains unadjusted and that Defendants wholly refused, failed and neglected to make any adjustments of same.

13. On November 25, 2015, an oral examination of Plaintiff Amin King, pursuant to Section 50-H of the General Municipal Law, was conducted by Defendants.

14. This action is being commenced within one (1) year and ninety (90) days of the date of the accrual of the causes of action in this complaint.

## FACTUAL AND PROCEDURAL HISTORY

15. In the afternoon of Thursday, October 4, 2012, an individual by the name of Giovanni Rojas ("the Complaining Witness"), a drug dealer and convicted felon, was allegedly abducted after leaving his residence, in the County of Queens, city and state of New York.

16. Allegedly, he was abducted by approximately four to five males who were impersonating police officers.

17. Purportedly, the Complaining Witness was forced into a van or minivan. His hands were bound, a blanket, towel or hood was placed over his head, and he was taken to an undisclosed location.

18. Upon reaching the undisclosed location, the Complaining Witness was supposedly taken down to the basement of a building where he was tied to a

concrete pillar or column with zip pies, with a ski mask, blanket or hood over his head and face, and threatened. Allegedly, threats were also made with regard to his family, and money was demanded from him.

19. Although his face was completely covered, the Complaining Witness was somehow supposedly able to see underneath the covering and saw the numbers "804" on the outside of a building as he was allegedly being taken out of the vehicle and into the basement.

20. Allegedly, while in the basement and with his face completely covered, he saw that there were two individuals there with him.

21. He described the first individual as a Black male in his 40s, six foot tall, thin build, bald head, with scruff on his face and/or chin, and a tattoo. The other individual was described as a male in his 40s, White, Hispanic or Indian and approximately 5'8 in height. The Complaining Witness, who was a tattoo artist by occupation, claimed that he saw that the black male had a tribal tattoo on his chest.

22. Plaintiff Amin King did not fit either description. Although African-American, he was in his 50s, approximately 5'6 in height, with a muscular build and no tattoo on his body.

23. There allegedly came a time when the Complaining Witness was left alone in the basement and was able to free himself and escape through a "window" located in the basement. After climbing through the "window," he apparently entered a backyard and then proceeded to run to a nearby police station where he reported the occurrence.

24. However, his escape through the "window" is a physical impossibility. The "window" was actually an extremely small steel-barred opening which a person, no matter how small, could not possibly fit through.

25. Upon information and belief, the investigating officers, including Defendant Visconti, upon conducting their initial investigation of the basement, knew, or should have known, that it was impossible to exit from the "window," thereby disproving the story of the Complaining Witness.

26. Thereafter, police officers allegedly brought the Complaining Witness to 804 Lafayette Avenue, in Brooklyn, New York, which he identified as the premises where he was held.

27. Upon information and belief, the police officers did not take him down into the basement where he was purportedly held nor was the Complaining Witness even taken inside the premises.

28. Additionally, as the Complaining Witness was allegedly being held in the basement, two individuals went to his home, tied up his grandmother Ms. Mendoza, robbed her and burglarized the premises.

29. Supposedly, the intruders were speaking Spanish and one of them was wearing a red hat.

30. On October 4, 2012, Defendant Visconti, an NYPD officer assigned to Internal Affairs, became involved in investigating the alleged crime, as it was believed that some level of police impersonation was involved.

31. Upon information and belief, Plaintiff Amin King was purportedly identified as a person of interest and an Investigation Card/Wanted Card ("I-Card) was issued

first on or about October 5, 2012 and then again on or about October 7, 2012 by the NYPD.

32. On or about October 7, 2012, Defendant Visconti put together a photo array and showed it to the Complaining Witness who purportedly identified Amin King.

33. The picture of Plaintiff Amin King which was used in the photo array was unduly suggestive.

34. Defendant Visconti knew, or should have known, that the photo array was unduly suggestive.

35. Upon information and belief, the picture of Plaintiff which was used in the photo array was decades old and did not fairly and accurately depict Plaintiff on or about the date of the incident.

36. Defendant Visconti knew, or should have known, that the picture was decades old and did not fairly and accurately depict Plaintiff on or about the date of the incident.

37. On or about October 12, 2012, Plaintiff Amin King, without a warrant and without probable cause, was detained and arrested at or near the premises known as 131-65 228th Street, in Queens County, city and state of New York, and charged with kidnapping, burglary, criminal impersonation and unlawful imprisonment.

38. Thereafter, Plaintiff was transported to the police station where Defendant Visconti conducted a lineup containing six individuals for the Complaining Witness to view through a one-way mirror.

39. The individuals in the lineup were dissimilar in age and/or characteristics to Plaintiff Amin King.

40. Upon information and belief, the majority of fillers in the lineup were in their early to mid forties, with the youngest being 28 years old. Plaintiff, who was in his mid-fifties, was the oldest individual in the lineup.

41. Plaintiff was instructed to wear a red hat during the lineup.

42. Plaintiff's goatee and/or facial hair was not removed and he was the only individual in the lineup with gray facial hair.

43. Defendant Visconti asked the Complaining Witness if he recognized anyone and he allegedly identified Plaintiff Amin King.

44. Upon information and belief, the Complaining Witness recognized Plaintiff Amin King by his chin, which was the only basis for his recognition of Plaintiff.

45. The lineup was unduly suggestive. Plaintiff Amin King was forced to wear a red hat, was not allowed to remove his goatee and/or facial hair, and was the oldest person in the lineup, with most of the fillers much younger than him.

46. Defendant Visconti knew, or should have known, that the lineup was unduly suggestive.

47. Defendant Visconti and other police officers of Defendant NYPD, were operating under color of authority and within the scope of their employment as members of the New York City Police Department.

48. Plaintiff was caused to be handcuffed, taken into police custody and held in police custody.

49. Subsequently, Plaintiff was arraigned wherein bail was requested by the People and imposed by the Court.
50. Thereafter, Plaintiff was further improperly and unlawfully detained and incarcerated.
51. In April 2015, Plaintiff was put on trial and on May 5, 2015, after being incarcerated for over two and a half years, Plaintiff was acquitted by a jury of his peers and released from custody.
52. The arrest of Plaintiff Amin King was illegal and without authority of law and was without a warrant.
53. The unlawful stop, detention, search, seizure and incarceration of Plaintiff Amin King by Defendant The City through its agents, servants and employees was in violation of the Constitutional rights guaranteed to all of its citizens under the new York State Constitution and the United States Constitution.
54. The arrest, detainment and incarceration of Plaintiff Amin King was without probable cause to believe that he had committed the offense or offenses with which he was charged.
55. Plaintiff Amin King did not fit the descriptions that the Complaining Witness gave to the police. He was not in his 40s, six foot tall, thin build and a tribal tattoo on his chest. Rather, he is an African-American male who was in his 50s, approximately 5'6 in height, with a muscular build and no tattoo anywhere on his body.
56. The "window" that the Complaining Witness allegedly escaped out of was actually an extremely small steel-barred opening that no person could fit through.

8

57. As part of their investigation, the police officers, including Defendant Visconti, did not take the Complaining Witness to the basement of the premises located at 804 Lafayette Avenue, where he was allegedly held.

58. Upon information and belief, although the Complaining Witness told police officers, including Defendant Visconti, that Plaintiff Amin King had a tribal tattoo on his chest, they never checked. Had they checked, they would have confirmed that Plaintiff did not have a tattoo and the statement of the Complaining Witness was false.

59. Upon information and belief, Plaintiff was caused to wear a red hat during the lineup because Ms. Mendoza believed that one of the two intruders was wearing a red hat, yet, according to the Complaining Witness, the Plaintiff was with him at all relevant times. Plaintiff could not have been at two places at the same time. Yet the investigating officers, including Defendant Visconti, failed to investigate properly and/or ignored the obvious inconsistency.

60. Additionally, Plaintiff when questioned by the investigating officers, including Defendant Visconti, informed them that he was working when the alleged incident occurred, and even provided an alibi.

61. Upon information and belief, the investigating officers spoke to Plaintiff's alibi, who confirmed what Plaintiff Amin King told the police, they nevertheless ignored it and failed to provide the alibi information to Plaintiff's defense counsel prior to his criminal trial.

62. The investigating officers targeted and/or framed Plaintiff Amin King for a crime that he did not commit even though they knew him to be innocent.

63. The investigating officers fabricated evidence, coerced witnesses, withheld material, exculpatory and impeachment evidence, and otherwise acted to deny Plaintiff Amin King due process of law.

64. The actions of the defendants deprived Plaintiff Amin King of his civil rights under the United States Constitution and the laws and Constitution of the State of New York.

65. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent and/or bad-faith acts and omissions of the defendants caused Plaintiff to be falsely arrested and imprisoned, and unfairly tried for a crime he did not commit.

66. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent and/or bad-faith acts and omissions of the defendants caused Plaintiff the following injuries and damages, which continue to date and will continue into the future: personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family relationships; damage to business and property; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled monetary relief.

67. All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously,

mentally, recklessly, negligently, and/or with bad-faith and said acts meet all the standards for imposition of punitive damages.

### COUNT 1 – 42 US.C.§1983 Malicious Prosecution Against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and MICHAEL VISCONTI

68. Plaintiff hereby incorporates by reference the foregoing paragraphs and further alleges as follows:

69. Malicious Prosecution by their conduct and under color of law, Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, AND MICHAEL VISCONTI deprived Plaintiff of his constitutional right to be free from malicious prosecution.

### COUNT 2 – Monell Claim Against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and MICHAEL VISCONTI

70. Plaintiff hereby incorporates by reference the foregoing paragraphs and further alleges as follows:

71. The acts complained of were carried out by persons in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City of New York ("the City") and the New York City Police Department ("NYPD"), all under the supervision of ranking officers of the NYPD.

72. The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and

discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

73. At all relevant times, the City and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of the City and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact, including Plaintiff.

74. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, the need for more effective supervision and other remedial measures was patently obvious, but the City and NYPD made no meaningful attempt to prevent future constitutional violations.

75. All of the acts by Defendants deprived Plaintiff of his federally protected rights, and Defendant City knew or should have known that such acts would deprive Plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

76. Defendant City is directly liable and responsible for the acts of the Defendant officer(s), as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline said officer(s) and because it repeatedly and knowingly

failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

77. The City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed in the Complaint.

78. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest and prosecute Plaintiff without probable cause and then fabricate a false story to cover up their violations of Plaintiff's constitutional rights.

79. Pursuant to the aforementioned City policies, practices and/or customs, officers failed to intervene in or report Defendants' violations of Plaintiff's rights.

80. Plaintiff Amin King's injuries were a direct and proximate result of the City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the City and NYPD to properly supervise, train and discipline their police officers.

81. As a result of the foregoing, Plaintiff was deprived of his liberty, endured psychological and emotional injury, humiliation, costs and expenses and suffered other damages and injuries.

## PENDENT CAUSES OF ACTION

82. The allegations set forth in paragraphs 1 through 81 are incorporated herein by reference.

83. Heretofore and on or about July 31, 2015, Plaintiff caused a written verified Notice of Claim to be filed with and served upon the proper officers, agents and employees of Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, AND MICHAEL VISCONTI, pursuant to the statutes in such cased made and provided. Annexed hereto as Exhibit "A" is the Notice of Claim.

84. That more than thirty days have elapsed since the service of such Notice of Claim and adjustment or payment thereof has been neglected or refused.

85. The acts and conduct hereinbefore alleged constitute false arrest and imprisonment, battery committed in performance of public duty or authority, malicious prosecution, the deprivation of State law and constitutional rights based upon several grounds. This Court has pendent jurisdiction to hear and adjudicate these claims.

### COUNT 3 – Pendant Claim of Malicious Prosecution Against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and MICHAEL VISCONTI

86. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

87. Plaintiff Amin King was wrongfully, unlawfully, unjustifiably and maliciously prosecuted against his will between October 12, 2012 and May 5, 2015, during the majority of which he was incarcerated.

88. The City is responsible for the malicious prosecution of Mr. King because at the time the defendant officer(s) and other employees were acting within the scope of their employment.

## COUNT 4 – State Law Claim for Negligent Infliction of Emotional Distress Against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and MICHAEL VISCONTI

89. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

90. The defendant police officers, including Visconti, in his individual and/or official capacity, functioning as an investigator, negligently and grossly negligently, and in breach of their duties owed to him to refrain from fabricating evidence, coercing witnesses, withholding material, exculpatory and impeachment evidence, and otherwise acting to deny him due process of law, directly and proximately caused Plaintiff Amin King, an innocent man, to be falsely arrested, maliciously prosecuted, and wrongly imprisoned for over two and a half years. Defendants' actions cause Plaintiff Amin King to suffer physical harm, including physical ailments resulting from the circumstance and duration of his wrongful incarceration, and to fear for his physical safety throughout the period of his pretrial incarceration.

## COUNT 5 – State Law Claim for Intentional Infliction of Emotional Distress Against Defendants THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, and MICHAEL VISCONTI

91. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

92. The defendant police officers, including Visconti, in his individual and/or official capacity, functioning as an investigator, intentionally and recklessly, and in breach of their duties owed to him to refrain from fabricating evidence, coercing witnesses, withholding material, exculpatory and impeachment evidence, and otherwise acting to deny him due process of law, directly and proximately caused Plaintiff Amin King, an innocent man, to be falsely arrested, maliciously prosecuted, and wrongly imprisoned for over two and a half years. Defendants' actions cause Plaintiff Amin King to suffer physical harm, including physical ailments resulting from the circumstance and duration of his wrongful incarceration, and to fear for his physical safety throughout the period of his pretrial and post conviction incarceration.

COUNT 6 – State Law Respondeat Superior Claim Against City of New York

93. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

94. At all times relevant to this complaint, the individual defendant police officer acted as agents of, and in the scope of his employment with The City. The conduct of which defendant committed the torts of false arrest, malicious prosecution, false imprisonment, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while defendant police officer was on duty, carrying out their routine investigative functions as an NYPD detective or officer, and engaging in such conduct as would have been reasonably expected by their employer. Indeed, the specific

conduct of the defendant police officer was known by, should have been known by, and/or was reasonably foreseeable to NYPD supervisors.

95. Defendant The City is liable for its agents' state law torts of malicious prosecution, false imprisonment, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

COUNT 7 – State Law Negligent Supervision Claim

96. Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

97. Defendant supervisors were grossly negligent and negligent in training, supervision, and discipline of the defendant police officer(s).

98. Defendant supervisors knew or, but for their grossly negligent and negligent training, supervision, and discipline, should have known that defendant police officers engaged in investigative misconduct including coercing witnesses, fabricating evidence, and failing to document and disclose material, exculpatory and impeachment evidence, and that they thereby caused Plaintiff to be maliciously prosecuted an falsely arrested and/or imprisoned.

99. As a proximate result of the gross negligence and negligence of defendant supervisors, defendant police officer(s) engaged in the previously set forth misconduct and caused the above-described acts of malicious prosecution, false arrest, false imprisonment, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress inflicted upon Plaintiff Amin King which directly and proximately cause his wrongful conviction and approximately

two and a half years of imprisonment, as well as the other grievous and continuing injuries and damages set forth above.

**WHEREFORE**, Plaintiff Amin King prays as follows:

A. That the Court award compensatory damages to him again the defendants, jointly and severally, in an amount to be determined at trial;

B. That the court award punitive damages to him against the defendants, in the amount to be determined at trial, that will deter such conduct by Defendants in the future;

C. For a trial by jury;

D. For pre judgment and post judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

E. For any and all other relief that this Court deems just and proper.

Dated: Richmond Hill, New York
April 28, 2017

Respectfully Submitted,

HOLIHAN & ASSOCIATES, P.C.

By: Nazareth Markarian, Esq.
Attorneys for Plaintiff
AMIN KING
135-24 Hillside Avenue
Richmond Hill, NY 11418
718-487-4468

18